We have one case remaining. Case number 21-3356 from Eastern Arkansas, John Smith v. Jeremy Andrews, Udall. Mr. Waddell, when you are ready, please proceed. Thank you, Your Honor. May it please the Court, I am Bill Waddell and I represent John Smith, the appellant in this matter. I appreciate the Court appointing me to this case because it is one that I think is important to the development of the law on the Prison Litigation Reform Act following Ross v. Blake. I have seen some decisions of panels that are unpublished, mainly per curiams that refer to Ross v. Blake, but unless I missed it, I don't see a published decision where the Court has addressed this, what I think is an important issue. I say it is important, Your Honor, because I think it will be something that will be of use to district courts, magistrate judges, prison officials and inmates all across your circuit. I would like to divide my argument today into two pieces. I have reserved five minutes for rebuttal, but in the initial part, to deal with availability first and what that issue looks like, how it applies to his case, Mr. Smith's case, and then to answer the question, what then? What if this Court were to find that the remedy was unavailable? How have other courts looked at that issue and how might we look at it based on what I think starts with Ross v. Blake? There is one line in Ross v. Blake that I think gives us a lot of guidance. I don't see other courts really looking at this. So this Court understands that the case comes to you on review of a summary judgment. The summary judgment was based on an affirmative defense by the prison officials who were named that Mr. Smith had not exhausted his administrative revenues. And below, the record is clear that his grievances were denied because they were untimely. They didn't expand out into the issues that became the focus in the lower court proceeding. Is there any relevance, so at least one of the appeals was also denied for other reasons? Like I think he forgot to put the right form on there and there were, I don't remember, maybe he forgot to sign it. I can't remember. There are several other reasons cited on one of those appeals. Does that make any difference? Your Honor, the record, I think he did not sign one. He didn't date one. Those technical requirements. My view is, after Ross v. Blake, that the only issue that is dealt with is availability. And then beyond that, courts can look at whether it was available or not, but not get into these nuances. And it is based on this one line that I have already previewed.  It's right at the end of part two and it says, if the court accepts, this is on remand, if the court accepts Blake's probable arguments on one or more of these scores, those are the three exceptions to exhaustion based on availability, then it should find, consistent this time with the PLRA, that his suit may proceed even though he did not file an ARP complaint. That is such a broad statement because it's saying, even if he didn't even file anything, if it was unavailable, it should proceed on the merits. I'm jumping then into the what then, but the Rucker v. Giffen case from the Second Circuit that we saw, it actually says, because we find that it was unavailable, the remedy, it should be remanded to proceed on the merits. Does the unavailability have to be something that the prison does? So the prison inhibits him in some way from filing his complaint? No, Your Honor. There is only one of the three exceptions and that is the thwarting exception where the prison, through intimidation or misrepresentations, that is the third of the Ross v. Blake factors. The first one, which Mr. Smith defended on, I was shocked when I read this how specific it was. I think it's at page 143 of the record. He argued that this was a dead end for him because he couldn't comply with it. He was in the hospital at the Med in Memphis, multiple skull fractures, broken limbs, and then went to Ouachita Regional Facility for medical treatment. He says very perfunctorily, I just didn't even have the forms when I was in the hospital. But the record would show he was incapable of doing anything. So the reason why I'm asking, the next question then is must the unavailability apply to everyone and not just a particular claimant? I do think that that's part of the what then issue. This Court needs to decide that, I think. But I think it's a particularized circumstance. In this case, it's clear from a factual standpoint, and I think the summary judgment should be reversed for this reason. He was either in a coma or a semi-coma and was unable to do anything. Does it matter that after the completion of his treatment, could there be some requirement or at least the conception of there being a reasonable period of time that some step could have been taken to pursue administrative remedies? Your Honor, that is the stealth issue that is recognized in one of the cases we cite. That actually goes to the second exception, I believe, of Ross v. Blake, the opaqueness. Because no one knows, it's not in the prison administrative procedure, no one knows that there might be this reasonable opportunity. That's how the other side defends this case. I want the case to be developed properly on the law, but I believe that it's unfair to ask a prisoner to say, infer something, that you can do something after a reasonable time. If the Court were to adopt that, Your Honor, think about all the factual circumstances that . . . I ask the question, but I don't think that's a likely result based on what the precedent is, which is we're discouraged from amending the statute. And the way the statute is, you've got a deadline, and if you don't meet the deadline, you don't have a remedy. So how do we get around and what enables this Court to get around the plain language of the statute that says if you file after a certain time period, it's too late? Which is, I think, basically what the district court said, right? Well, Ross v. Blake would say that if one of the three exceptions, the dead-end exception or the opaque exception, which I think both could apply here, mean that the remedy is unavailable, then the Court would decide what happens with it at that point. And as I've said, Ross v. Blake said it goes back to proceed even if he didn't file a complaint. Rucker v. Giffen says if it's unavailable, send it back for a trial in the merits. There's two other circuits that have got remedies there, but I think the Court's question is talking about the grievance procedure at the prison, which is fifteen days, and there's no exception to it. There, this Mason v. Korizon, which was a Western District case, the Court there said if it's unavailable, we're going to give you a step one exception, that is the timeliness. But that was pre-Ross v. Blake, and I don't believe that that case would be decided the same way. And, of course, it was not appealed to this Court, it's not precedent to this Court. Well, and I want to return a little bit to my earlier questions, which is, you know the reason why I'm asking this. I'm trying to figure out what unavailability means, because if you look at the three exceptions, they talk about things that are more generally applicable to the entire prison population or jail population, and at least in some circumstances, talk about deficiencies on the part of the prison staff. And so I'm trying to figure out whether something that affects a universe of one individual is available. Terrible. I mean, these are horrendous facts, getting hit with what was a lock in a sock. But I'm trying to figure out if that's what's contemplated by those three exceptions in the Ross v. Blake case. In Ross v. Blake, they define available, and they say, capable of use for the accomplishment of a purpose and that which is accessible or may be obtained. And so it is a one-factor kind of test, but it's factually sensitive. And one of the ways that they've dealt with this is in the last case that I told the Court I would cite, the Smallwood case just decided on February 3rd from, I think, the 7th Circuit. They require a hearing called a PAVEY, P-A-V-E-Y hearing, and they go through these facts and deal with these issues and determine. And it's not a jury issue. In that circuit, they've allowed the district judge to decide these preliminary questions related to exhaustion in that kind of a hearing. This Court may think that's a good way to go. It would be, to me, creating something, which concerns me. It seems like the easiest decision is just to say the summary judgment was in error here. So we remand and ask the district court to determine if a remedy was available since that release hadn't been a ruling on that? What I've thought about, as an officer of the court, even though I'm representing Mr. Smith, I care deeply about how this gets developed. I don't know if the record is fully developed. I would like the court, and Mr. Smith would like the court, to say it was unavailable and do as in Rucker v. Giffen and remand it for a trial in the merits. If the court is not comfortable with that, there are intermediate steps represented by these other cases, Lamb v. Kendrick and Smallwood, that I've cited in my brief. They have different ways of looking at it. But at a minimum, it seems like the case should be reversed and remanded for at least a hearing on this availability issue at which these issues could be more developed. My preference would be a bright line to say if it's unavailable, and on this record it was unavailable, but summary judgment was not premised on that. There is no ruling in that sense, if that's what the court is saying. The ruling was on alternative issues, which I don't see any of the courts saying, okay, it wasn't unavailable, but we're going to decide it based on these other technical things like not signing or dating. It seems like after Ross v. Blake, the unavailability issue permeates everything else. To follow up on that, this case may be easy in the case of one because this is a situation which he was actually, there's evidence that he was actually unconscious, couldn't file anything. But one can easily conceive of a situation that is much different and could involve hospitalization as well. For example, somebody needs to have some sort of surgery and they can't get back to the hospital or get back to the prison in two and a half weeks to pick up the forms, but they're perfectly conscious. They make no attempt to have the forms delivered, they have no attempt to file anything outside the forms, and that might be a much closer case. A blanket rule, I think, can be troubling in some respects, too, and might be taken to its extreme, the one you're proposing. I actually think the blanket rule should be that unavailability is the threshold issue and there will be factual circumstances about that, but that the district court has to determine that. If it's unavailable, my proposal, my advocacy here is that if it's unavailable, then we don't deal with anything else and it goes to trial in the merits. I know my time is about up, so I need to save a minute or two, if I may. Thank you, Mr. Wardell. Ms. Templin. Thank you, Your Honor. May it please the Court. John Smith failed to exhaust and cannot now sue in Federal court for three reasons. First, Smith failed to identify the defendants and state the claims he brought to Federal court, and that alone is fatal. Second, Smith's medical incapacity is not the type of availability that the PLRA and Ross v. Blake contemplate. And third, even if medical incapacity determines unavailability, Smith's coma does not explain his lengthy delay afterward or the substantive deficiencies with his grievance. What in the record would indicate that if he had filed something after he returned and regained his health, that it would have been considered and been able to have been considered? Your Honor, I would presume that ADC would follow its 15-day policy, but as this court has recognized in cases like Burns, sometimes prisons do waive timeliness and decide merits cases anyway. In fact, the ADC has done that in district court cases that cite the Burns decision. Now, they couldn't have actually addressed his claims here, because even if ADC had done everything that Smith was asking for, even if they had said, sure, it's been 16 months since the incident and four months since he got back to prison, and they had tried to do something to address the merits of his grievance by resolving the fact that, well, he alleged inmates had locks, he still wouldn't have exhausted. They could have given him everything that he said, but it wouldn't be good enough. So why not say that? I mean, I don't know how to read this, because the prison says, oh, it's untimely, and then at least one of the appeals, not all of them, says, oh, no, by the way, there's all these other defects, too. Had the prison said there are all these other defects and not mentioned timeliness, we might be in a different situation. I think had the prison said all of these other defects, they would have waived the timeliness issue, which is also part of this Court's decisions in cases like Burns. So to preserve that, they would focus on timeliness. But to get more specific into those three grievances, as you pointed out, the first one was not denied on timeliness. At the end of the day, it wasn't exhausted because the prisoner, because Smith didn't properly appeal. The second one is actually not about the incident. That one, he says, I didn't get my grievance form, an answer on my first grievance form. They respond, it was rejected as untimely, and then you didn't properly appeal. He says, then, I was in a coma or in the hospital for 15 days. And they come back and actually say, they quote the 15-day rule, but also point out he had waited more than a year in order to grieve. To me, that reads a bit more like, you know, the year to them is troubling. By that point, as he said in some of his pro se briefings, the prisoner who beat him with a lock was no longer in the prison. But the one thing about that, and I think this is important, is that there are prisons that actually say if you are incapacitated, you have 15 days from the time you're no longer incapacitated. And here we don't have that, which leads back to the Chief's question, which is even if you would have grieved within the 15 days after you returned to prison, there's no provision in the plain language of the policy allowing that. That's true, Your Honor. I think that could go to our second argument, which is this type of incapacity is not the type that Ross v. Blake and the PLRA talk about when they talk about availability. Some of your questions earlier were getting at the three categories in Ross v. Blake were all geared toward the ordinary prisoner. That's actually language that the second Ross exception about opacity uses. That's particularly notable when you understand what Ross was remanding. So in that case, the prisoner subjectively thought he had complied. The lower court said he reasonably had thought that. And he actually argued in his Supreme Court briefing that that should be enough for unavailability. And the Supreme Court said, no, actually you need to look at whether the ordinary prisoner would have had trouble following this procedure, very different from the type of subjective analysis that Smith is asking for in this case. And that fits with the statutory purpose of the PLRA. As Ross also explains, the PLRA replaces a previous regime that allowed courts to consider exceptional circumstances to consider whether it would be equitable in a particular circumstance for a prisoner to have had to grieve. And Ross says, no, that's not the role of judges anymore. Now that may be harsh in some situations. We acknowledge this, the facts of this case, but that's Congress's policy decision that they made. And as the Supreme Court has read the PLRA, special circumstances and individual subjective characteristics are not the type of things the courts are looking at. And we'll also note that that is consistent with how the Sixth Circuit approached the PLRA issue in the unreported Williams decision that Smith acknowledges. Admittedly, that is unreported, but there that court said mental capacity for a prisoner who indisputably was incapable of following the grievance process because he had mental deficiencies, that that wasn't some, that didn't bear on availability remedy. Why, why would it be wrong for this court to do something in, in, in line with Rucker from the Second Circuit that creates some, some law explaining availability? I think there are a couple of distinctions with Rucker. One is just going back to the first point. In Rucker, no one disputed that the prisoner had properly filled out the grievances. I think in Rucker, in Lanigan, in Days, in every court that Smith cites, there weren't additional substantive flaws with the grievance. The inavailability was, to use the phrase, but for cause of the prisoner's failure to exhaust. And that's just not the case here. I think that is also why he asks for a remand and to consider some of, you know, cites the Smallwood case and discusses on page 7 of his reply brief that this court could remand to consider maybe if he was also mentally incapable of following the grievance forms. Another distinction with Rucker is that at footnote 4 of Rucker, that court notes that the prisons had not argued ever that he should have grieved sooner in the process. Now, here, that's a consistent argument that ADC has made throughout this entire process, that it's disturbing to them that he waited 16 months. And, and also just to note on this, because I think the briefing doesn't always make this clear, including below, he had grievance forms available to him from August of 2017 when he returned to an ADC rehab facility. In fact, he notes in his reply brief that he started trying to follow the grievance procedure in about February of 2018, just never apparently actually followed through with filing anything, which I guess the closest explanation for that, he gives at page 118 of the appendix, he didn't know at that point which defendants he wanted to file a grievance. Of course, I think that Rucker is too broad, though, because one of the things that bothers me is the colloquy I had with opposing counsel, which is they set out the two requirements and it says failure to file for the administrative remedy within the time allowed results from a medical condition. You know, if you stub your toe and you end up getting septis or something and you end up in the hospital, presumably you would still have a way of filing. So it just seems to me like this is the articulation of the rule is way overbroad. I totally agree with you. I think the facts of the Day's case that they cite are actually another potentially troubling instance. In that case, the inmate had a broken arm. And generally when someone breaks their arm, they're going to have trouble writing, but they can ask another inmate or a prison guard to help them fill out forms. In fact, ADC's grievance policy says that prisoners who are going to have some trouble following the grievance process should ask a prison guard for assistance in that case. But under the reasoning of Rucker or Days or certainly Lanigan, all of that would be potentially excusing their failure to file. I will also note one factual thing about this case, going to the fact that the record has not been fully developed. We actually are not aware whether Smith was in a coma during the entire 15 days for the grievance process. We know he was in the hospital for about 22 days, and at some of that time he was conscious. The medical records indicate they talk about him wearing a helmet or eating food, so at some of that point he was conscious. It's unclear whether he regained consciousness or at that point whether he could have asked a prison guard who may have been around to get a grievance form for him to help him figure to fill that out. So at very least, if this Court would be inclined to adopt some sort of medical incapacity exception, we would encourage this Court to leave that factual finding open rather than or leave that to the district court rather than just say he was across the board incapable of grieving in this case. What's wrong with a very narrow rule that says when there's complete and total incapacity, in other words the guy is not even conscious, you know, you can't even get somebody else to write it, that that is unavailable within the meaning of Ross v. Blake? Because I don't think that is pegged to the same ordinary prisoner standard that Ross v. Blake talks about. The ordinary prisoner is not in a coma any more than he has a broken arm or a cold or a surgery or might have, as in that case, made a reasonable mistake that isn't actually objective that the ordinary prisoner would not have made. And to the extent the inquiry is pegged to the ordinary prisoner, it's indisputable here that ADC's process is not, or nobody at least is alleging that ADC's process is too opaque for the ordinary prisoner to follow, that it's something or that somebody was trying to talk prisoners out of grieving, misrepresenting, threatening them, or that it's truly a dead end, that they're not providing relief to the ordinary prisoner. So at that level, we would say this is just not the type of thing that the PLRA and Ross v. Blake instruct courts to consider. But even under the standard, and I was advocating the same thing to opposing counsel, I could think of things that would be problematic, for example, if they were to say, for example, the prison policy said if you're in solitary, you cannot file a grievance. You can't. And you're in solitary for 30 days and far more than the 15 days. But if you're not, then you can file a grievance. But bad things happen while you're in solitary. Under that situation, not every prisoner would be subject to that limitation. Yet your argument seemed to imply that too bad, so sad, you didn't file within 15 days. Well, I think that hypothetical, the prison is actually taking some action that prevents a certain class of prisoners from grieving. It sounds like in that policy, they're saying, we're actually not going to give people grievance forms if they're in solitary confinement. Or perhaps we're going to have in our handbook that, well, you did something that got you in solitary, so you don't deserve to be able to grieve. That does look like the dead-end exception under Ross, or perhaps misrepresentation threatening, something that actually is within those categories, very different from a subjective. You have perhaps not even, you know, a medical issue, but a mental illness, dementia, a, you know, depression, schizophrenia, something like that makes it difficult for you to follow the grievance policy. All of that's true. But here's the counterargument. The counterargument is it kind of bleeds the merits. I get that. But the counterargument is he's alleging that the prison is the one who put him in the incapacitated state. In other words, they didn't prevent him getting hit over the head with a lock, and so it's the prison's fault anyways. And it would have been the prison's fault with anyone else who got hit in the head and ended up in the hospital. I think it's several steps removed from that. This isn't a circumstance where, for instance, a prison guard found out he was going to try and file a grievance for harassment against him and went and beat him over the head to put him in the hospital so he couldn't grieve. Those are the types of things that Rutgers, or excuse me, that Ross appears to talk about where someone is threatening or harassing someone to stop them from participating in the grievance process. This case, not only is it not the prison who was actually beating him up, but it's not actually about the grievance process. Something happened with the prisoner. He suffered some consequences as a result, terrible injuries. But it was not designed to prevent him to grieve, which is what the Ross categories appear to be about. If there are no further questions, Your Honor, we would ask this Court to affirm the District Court's decision. I don't see any additional questions. Mr. O'Dell? I sincerely appreciate the Court's questions because this is a troubling case as to what is the step. If it's unavailable in this fact situation, how does that apply across interpretation of the Prison Litigation Reform Act? It is troubling, but that's in the text. He's only required to exhaust what's available. So the issue is if it's unavailable, does he have an exhaustion requirement at all? I hope I've said it that way in the brief. That's why I think that the Rucker v. Giffen standard is not that far out, and it's consistent with that language I read from Ross v. Blake. But just in my remaining seconds, let me just tell the Court, in case the Court has not had a chance to look at the Smallwood v. Williams case. In dealing with this Pavey hearing, the Pavey case was decided by Judge Posner, and anytime Judge Posner wrote something over my career, I have paid pretty careful attention to it. I enjoy reading what he says and how he thinks. In that case, they say if a judge finds that it was unavailable and it's not exhausted because of that, then they give, as I read the opinion, they give the prisoner an opportunity to exhaust at that point. That's another way of looking at this that works, to see can you do it. What I think about this is just in the end, it's an unfair burden put on him at this point. I've given the Court, I think, three different kinds of approaches that you might take to it. Obviously, he has asked me to advocate for reversing the case and remanding it for a trial in the merits. Thank you, Mr. Waddell. The Court notes that you are serving as appellate counsel by appointment, and we appreciate your willingness to serve in that capacity.